UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

vs.   Case No. 8:11-CR-318-T-27TGW

KEVIN L. WHITE; et al.
_____/

## ORDER

**BEFORE THE COURT** is Defendant Kevin White's Motion for Post Trial Judgment of Acquittal; Motion for New Trial (Dkt. 162) and the Government's opposition (Dkt. 165). Upon consideration, Defendant's motion is DENIED.

In considering Defendant's motion, the evidence must be viewed in the light most favorable to the Government, all reasonable inferences tending to support the Government's case are accepted, and any conflicts in the evidence and credibility choices are to be resolved in favor of the jury's verdict. *United States v. Ward*, 197 F.3d 1076 (11th Cir. 1999). The inquiry is whether a reasonable jury could have found Defendant guilty beyond a reasonable doubt. *Id.*

Defendant was charged in a ten count indictment with conspiracy to commit bribery (Count One), accepting bribes (Counts Two through Five), conspiracy to commit mail and wire fraud (Count Six), honest services mail fraud (Count Seven), honest services wire fraud (Counts Eight and Nine), and making a false statement to the F.B.I. (Count Ten) (Dkt. 1). The essence of the conspiracy and bribery charges was that as a Hillsborough County Commissioner and Chairman of the Hillsborough County Public Transportation Commission ("PTC"), Defendant corruptly solicited and accepted cash

1

bribes to have a towing company certified by the PTC so that it would be eligible to be placed on the lucrative Hillsborough County Sheriff's Office's rotational towing list, and that once the certification was obtained, Defendant would assist the towing company in being placed on the Sheriff's towing list. After a jury trial, Defendant was convicted on Counts One (conspiracy), Four and Five (bribery), Six (conspiracy to commit mail and wire fraud), Eight and Nine (honest services wire fraud) and Ten (false statement) (Dkt. 153).

**Counts One, Four, Five, Six, Eight and Nine**

Defendant first seeks judgment of acquittal as to Counts One, Four, Five, Six, Eight and Nine. Relying on the fact that the PTC does not receive federal funding and operates independently of Hillsborough County, Defendant contends that the evidence did not establish a sufficient federal nexus under § 666 (a)(1)(B) between the bribes paid to him to obtain the PTC's certification and the federal funding received by Hillsborough County. The essence of Defendant's argument is that the PTC did not receive federal funds, the bribes he was alleged to have solicited and accepted involved only the PTC's business, and therefore he could not have violated 18 U.S.C. § 666(a)(1)(B). This contention is the same that he made at the conclusion of the Government's case in chief in his Rule 29 motion.

The contention lacks merit because it was Hillsborough County's "business" to insure that only towing companies certified by the PTC would be placed on the Sheriff's rotational towing list, and since Hillsborough County received federal funding, and Defendant was an agent of Hillsborough County, the requisite federal nexus for a § 666(a)(1)(B) violation exists. Accordingly, for the same reasons Defendant's Rule 29 motion for judgment of acquittal was denied, the instant motion (Dkt. 162) is DENIED.

The evidence at trial relevant to this issue was largely undisputed. Defendant was an elected Hillsborough County Commissioner. By virtue of that position, he also served on the PTC. The PTC is an independent entity created by Special Act of the Florida Legislature. One of the functions of the PTC was to certify towing companies for eligibility to be placed on the rotational list to perform towing services for the Hillsborough County Sheriff's Office. The PTC also establishes the towing rates for towing services performed in Hillsborough County (Govt. Exh. # 74).

As Chair of the PTC, Defendant presided over its meetings and worked closely with the Executive Director of the PTC. While the PTC does not itself receive federal funding, Hillsborough County does receive in excess of $10,000 per year in federal funding (Govt. Exh. # 1). The Hillsborough County Sheriff's Office, an agency of Hillsborough County, receives federal funding through Hillsborough County.[1]

Significantly, the Hillsborough County Sheriff's Office will not place a towing company on its rotational list unless the company has been certified by the PTC. While the PTC determines whether a particular company is eligible to be placed on the list, the decision to actually place a company on the list is made by the Hillsborough County Sheriff's Office. Nonetheless, it is apparent that these two entities closely cooperate in the process of certification and placement of towing companies on the rotational list. In sum, it is the "business" of both the PTC and the County. *See United States v. Bonito*, 57 F.3d 167, 173 (2d Cir. 1995), *cert. denied*, 516 U.S. 1049 (1996).

The jury heard evidence that Defendant met numerous times with a confidential informant

---

[1] Although the PTC operates independently of the County, the evidence established that the funds of the PTC and Hillsborough County are co-mingled in the same bank account into which the County's federal funding is deposited. The PTC also contracts with Hillsborough County for certain services, such as the cleaning of its offices.

and subsequently with an undercover F.B.I. agent who were seeking assistance in having a specific towing company, Tri County Auto Towing ("Tri County"), certified by the PTC and placed on the Sheriff's rotational list. The jury saw video (Govt. Exh. # 55) of Defendant accepting $5,000 in cash from the undercover agent. Defendant presided over the PTC meeting during which Tri County was certified and voted for the certification. After the company was certified, Defendant met with the agent and agreed to contact the Sheriff's Office to assist in having the company placed on the rotational list. Identifying himself as a Hillsborough County Commissioner, Defendant contacted two representatives of the Hillsborough County Sheriff's Office in an effort to have Tri County Towing placed on the list.

Defendant's conviction for violating 18 U.S.C. § 666(a)(1)(B) is supported by sufficient evidence if a reasonable juror could find, beyond a reasonable doubt, that he (1) solicited or accepted anything of value; (2) with the corrupt intent to be influenced or rewarded; (3) in connection with any business, transaction, or series of transactions of Hillsborough County, involving anything of value of $5,000 or more. *United States v. McNair*, 605 F.3d 1152, 1185-86 (11th Cir. 2010). As the Supreme Court has recognized, § 666(a)(1)(B) "was designed to extend federal bribery prohibitions to bribes offered to state and local officials employed by agencies receiving federal funds." *Salinas v. United States*, 522 U.S. 52, 58 (1997).

Under § 666(a)(1)(B), Defendant must be shown to have been "an agent of an organization, government, or agency" that receives in excess of $10,000 in a one-year period. *United States v. Phillips*, 219 F.3d 404, 411 (5th Cir. 2000); *see also United States v. Moeller*, 987 F.2d 1134, 1137 n.9 (5th Cir. 1993). The definition of "agent' is broadly defined as "a person authorized to act on behalf of another person or a government and, in the case of an organization or government, includes

4

a servant or employee, and a partner, director, officer, manager, and representative." *Id.* Defendant concedes that he was an agent of Hillsborough County (Dkt. 162, p. 3-4).

Defendant's focus on the role of the PTC and that it does not receive federal funding is misguided. In this regard, it is not the role of the PTC which is critical but rather Defendant's role. *United States v. Moeller*, 987 F.2d 1134, 1137(5th Cir. 1993)("The critical inquiry is not the role of the TFIS and whether it interposes a separate entity shielding any violations of this statute, but the role of the defendants."). What must be determined is whether Defendant was the agent of Hillsborough County as he performed his functions for the PTC. *Id.*[2]

Here, Defendant's role as an elected Hillsborough County Commissioner renders him an "agent" of Hillsborough County. Significantly, but for his status as a County Commissioner, Defendant would not have been a member of the PTC. Certainly, as a member and Chair of the PTC, charged with the responsibility of certifying towing companies for eligibility to be placed on the Sheriff's rotational list, Defendant was authorized by Hillsborough County to perform those attendant responsibilities on which the Sheriff's Office would rely. And the federal funds need not be directly affected before a public official like Defendant who accepts a bribe violates § 666(a)(1)(B):

> Subject to the $5,000 threshold for the business or transaction in question, the statute forbids acceptance of a bribe by a covered official who intends "to be influenced or rewarded in connection with any business, transaction, or series of transactions of [the defined] organization, government or agency." § 666(a)(1)(B). The prohibition is not confined to a business or transaction which affects federal funds.

*Salinas v. United States*, 522 U.S. at 57; *Sabri v. United States*, 541 U.S. 600, 604-08 (2004)(no

---

[2]As the Government acknowledges, there are factual distinctions between the instant case and *Moeller*. Notwithstanding, the analysis in *Moeller* provides persuasive guidance here. As *Moeller* recognizes, "in enacting section 666, 'Congress has cast a broad net to encompass local officials who may administer federal funds, regardless of whether they actually do.'" 987 F.2d at 1137.

5

proof of direct connection between federal funds and alleged bribe required in § 666(a)(2) prosecution); *United States v. Harris*, 296 Fed. Appx. 402 (5th Cir. 2008).

To sustain a conviction under § 666(a)(1), the evidence must establish "some nexus between the criminal conduct and the agency receiving federal assistance." *United States v. Phillips*, 219 F.3d at 413-14 ("... '[a]lthough the conduct prohibited by section 666 need not actually affect the federal funds received by the agency, there must be some nexus between the criminal conduct and the agency receiving federal assistance.'") (quoting *Moeller*, 987 F.2d at 1137). However, considering the broad intent of the statute, "[a]ll that is required is "some nexus between the criminal conduct and the agency receiving federal assistance . . . *The particular program involved in the theft or bribery scheme need not be the recipient of federal funds."* Moeller,* 987 F.2d at 1137 (emphasis added).

In summary, the evidence established that (1) Defendant was an agent of Hillsborough County, (2) Hillsborough County was a local government which received in excess of $10,000 each year in federal funds, (3) Defendant corruptly solicited and accepted money to facilitate the PTC's certification of Tri County, (4) the Hillsborough County Sheriff's Office, as an agency of Hillsborough County, relies on the PTC's certification process before placing a towing company on its rotational list, and (5) Defendant attempted to influence the Hillsborough County Sheriff's Office in its decision to place Tri County on the rotational list.

From this evidence, a reasonable fact finder could find beyond a reasonable doubt that Defendant violated § 666(a)(1)(B). Notwithstanding that the PTC did not receive federal funding directly, it was the business of Hillsborough County to insure that only those towing companies certified by the PTC would be eligible to be placed on the Sheriff's Office's rotational list to provide

6

towing services in Hillsborough County. The County's interest in the PTC certification process provides the requisite nexus to the federal funds received by the County. The value of the PTC's certification, a prerequisite to being placed on the Sheriff's rotational list, is therefore connected, albeit indirectly, to the integrity of the federal funds received by Hillsborough County, which it in turn distributes to its agency, the Hillsborough County Sheriff's Office. A sufficient federal nexus therefore exists in the evidence.

**Count Ten**

Defendant's argument that he should be acquitted on Count Ten (false statement) is rejected for the same reasons it was when he made his Rule 29 motion.[3] The agents asked Defendant four times if "Darryl" (the undercover agent) had ever provided him with money, a campaign contribution, or anything of value. Defendant falsely denied receiving money or anything of value from "Darryl." A § 1001 violation was proven beyond a reasonable doubt.

While Defendant seems to suggest that he was asked whether he ever accepted a "bribe" from "Darryl," the Court's recollection is that he was asked if he ever received any money from "Darryl." Regardless, the jury was free to determine whether the money Defendant accepted from the agent was a bribe as opposed to illegal campaign contributions. On the surveillance tapes, Defendant can be heard reassuring the agent that he would walk Tri County's application through the PTC and that he "would make sure it happens." (Govt. Exh. # 46.2). After the application had been approved, Defendant is heard telling the agent he "got the s___ approved." (Govt. Exh. # 47.4). Subsequently, Defendant can be heard telling the agent he needed "ten" within two weeks, and the agent telling Defendant he could provide "half" up front and the other half "when we finish." (Govt. Exh. # 54).

---

[3] At that time. Defendant conceded that the evidence presented a factual issue.

Within a day or two, Defendant is seen on video accepting $5,000 in cash from the agent (Govt. Exh. # 55).

The jury could reasonably infer that Defendant anticipated receiving $5,000 from the agent when they met for lunch at the Longhorn Steakhouse, in exchange for assisting Tri County being placed on the Sheriff's rotational list. Indeed, the jury heard that shortly after accepting the cash from the agent, Defendant agreed to speak with the Sheriff's Office about the rotational list on behalf of Tri County, and followed through on this promise. Sheriff's representatives testified that Defendant telephoned them, identifying himself as a County Commissioner, and attempted to obtain favorable consideration for Tri County.

In sum, the jury heard evidence that Defendant solicited and accepted cash bribes to facilitate the PTC's certification of Tri County Towing and obtain favorable consideration by the Hillsborough County Sheriff's Office in having Tri County placed on its towing rotation list. Defendant never reported the money as contributions on his campaign financial disclosure reports (Govt. Exh. # 45). The jury was therefore free to infer that the money Defendant solicited and accepted were bribes. And when Defendant denied (four times) during his interview with the F.B.I. that he ever accepted money from "Darryl" (the undercover agent), the jury was free to find beyond a reasonable doubt that this denial was a false statement, made in violation of 18 U.S.C. § 1001.

Defendant's alternative request for a new trial is denied.

**DONE AND ORDERED** this 5th day of January, 2012.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

8